UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

   Dione D. Grove,                                              Case No. 14-49575-MBM
                                                                     Chapter 13
                                  Debtor.   /                    Hon. Marci B. McIvor

## OPINION DENYING DEBTOR'S REQUEST
## THAT U.S. BANK PAY ATTORNEY FEES TO DEBTOR'S COUNSEL

      This matter is before the Court as a result of Debtor's request that U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2007-BNC1 Mortgage Pass-Through Certificates, Series 2007-BNCI (hereinafter "U.S. Bank") pay attorney fees incurred by Debtor in responding to a Notice of Mortgage Payment Change. For the reasons set forth below, the Court denies Debtor's request for attorney fees.

### Statement of Facts

      On or about June 12, 2007, Dione D. Grove, borrowed money to purchase a home located at 33745 Brooks St., Brownstown, Michigan. To secure repayment of the loan, Ms. Grove granted a mortgage to BNC Mortgage, Inc. It appears undisputed that the mortgage was subsequently sold or assigned to U.S. Bank. The mortgage is serviced by OCWEN Loan Servicing, LLC.

      On June 30, 2014, Ms. Grove (hereinafter "Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On October 13, 2014, OCWEN Loan Servicing, LLC as servicer for U.S. Bank filed a claim in Debtor's bankruptcy case. The amount of the claim is $288,553.38. Included in the claim is a "Statement of Pre-Petition Fees, Expenses and Charges."

This statement includes an escrow shortage in the amount of $2,404.54.[1] The statement of pre-petition fees does not show any amount owed for tax advances or insurance advances. The proof of claim includes a separate statement entitled "Escrow Account Disclosure Statement - Bankruptcy Projections for the Year." The Escrow Account Disclosure Statement pertains to post-petition escrow payments and calculates the estimated amount of tax disbursements for the year following the filing of the bankruptcy. The Disclosure Statement includes the following language:

> In the event there is a tax and/or insurance increase over the coming escrow year, Federal law allows additional funds to be held to prevent the escrow account from being overdrawn. This additional amount, which is called a cushion, may be up to 1/6th of the total payments to be made from the escrow account for the coming escrow year. Based on anticipated payments from your escrow account, which total $4,127.05 for the year, the required cushion is $687.84 (1/6th of $4,127.05). To avoid a shortage, your escrow balance should not fall below the cushion amount at any time during the coming escrow year.
>
> According to the projections for the coming year, the expected escrow balance is $2,407.45. Your first monthly mortgage payment for the coming escrow year, beginning with your payment due on 07/01/14, will be $1,088.30 (rounded) of which $744.38 will be for principal and interest and $343.92 will go into your escrow account.

On September 4, 2014, this Court entered an Order Confirming Debtor's Plan of Reorganization. The Order Confirming Plan specifically stated:

> IT IS FURTHER ORDERED that the debtor shall maintain all policies of insurance on all property of the debtor and this estate as required by law and contract.

On October 14, 2015, U.S. Bank filed a "Notice of Mortgage Payment Change"

---

[1] It is unclear where this figure comes from. The Court assumes that this figure reflects the amount Debtor's mortgage escrow account was underfunded as of the date of the filing of the petition.

(hereinafter "NMPC"). The NMPC stated that as of December 1, 2015, Debtor's monthly mortgage escrow payment would increase from $343.92 to $605.48. The NMPC included two documents, an "Annual Escrow Account Disclosure Statement - Bankruptcy Projections for Coming Year" (hereinafter "Escrow Disclosure Projections") and an "Annual Escrow Account Disclosure Statement - Bankruptcy Account History" (hereinafter, "Escrow Disclosure History").

The Escrow Disclosure Projections projected an estimated tax liability for 2016 in the amount of $4,201.11. This amount is virtually identical to the amount stated in the Escrow Disclosure Projection attached to U.S. Bank's Proof of Claim. Based on the projected taxes for 2016, the Escrow Disclosure Projection states that the escrow payment necessary to fund payments of taxes, is $350.09. The Escrow Disclosure Projections also contains a "projected ending balance." The "projected ending balance" shows a negative balance in Debtor's escrow account as of January, 2016 in the amount of $2,364.49. The explanation as to where this figure came from and as to how the figure translates into an increased escrow payment is as follows:

> According to the last month of the account history, the expected escrow balance is $-1,021.31, making the escrow balance deficiency $1,021.31 (the balance deficiency equals the total amount paid into escrow minus the total amount of money to be paid this year). Total escrow shortage - Based on the expected balance deficiency of $1,021.31, and the minimum required balance/cushion of $700.18, an additional $3,063.67 is needed for the escrow balance. Projected Monthly Payment for Escrow - The total escrow shortage of $3,064.67 has been spread over 12 months and broken into 12 equal monthly payments of $255.39 per month (the total anticipated shortage divided by 12). The shortage spread amount of $255.39 will be added to the target escrow payment of $350.09 calculated above, for a sum total of $605.48. This total, $605.48 will be the monthly amount due for payment into escrow.

The "Escrow Disclosure History" attached to the NMPC shows "Actual Payments of Escrow" and "Actual Payments from Escrow" for the period June, 2014 - November, 2015. For

3

that period, the actual payments into Debtor's escrow account total $5,502.73. These payments consist of $2,404.54 (the escrow shortage included in U.S. Bank's Proof of Claim) and 9 monthly payments from Debtor. It appears that U.S. Bank did not receive any escrow payments for March, April, May, or June of 2015. The "actual payments from escrow" show a July, 2014 disbursement for "hazard insurance" for $512.00, an August, 2014 payment of $2,157.75 for township taxes, a December, 2014 disbursement of $2,043.36 for township taxes, and a June, 2015 disbursement in the amount of $2,407.00 for "Proof of Claim Escrow Shortage Adjustment." Based on these figures, the Escrow Disclosure History states the total "actual payment from escrow " as $7,120.56. However, in the narrative portion of the Escrow Disclosure History, it states:

> Summary of Actual Payments Made from Escrow (as shown above): $4,201.11 for property taxes, $512.00 for Lender placed Hazard Insurance, $4,814.90 for POC Escrow Shortage Adjustment.

As stated above, the NMPC was filed on October 14, 2015. The effect of the NMPC was to require an increase in the Debtor's monthly plan payment in order to cover the additional amount owed to fund the change in the escrow payment. Because the NMPC created a funding issue for Debtor's plan, on December 2, 2015, the Chapter 13 Trustee filed a "Trustee's Notice that Plan is no Longer Adequately Funded."

On January 8, 2016, Debtor filed an "Objection to U.S. Bank's Notice of Mortgage Payment Change." On January 11, 2016, this Court scheduled a hearing on the Notice of Mortgage Payment Change for February 11, 2016. On February 3, 2016, U.S. Bank National Association filed a Notice of Withdrawal of the Notice of Payment Change.

On February 5, 2016, U.S. Bank filed a document entitled "Response to Debtor's

4

Objection to Notice of Payment Change."  In its "Response," U.S. Bank stated that while it had been willing to withdraw its Notice of Payment Change, it was unwilling to pay attorney fees that Debtor had incurred in responding to the NMPC.  On February 9, 2016, Debtor filed a "Reply in Response to Debtor's Objection to Notice of Payment Change."  In her response, Debtor argued that she was entitled to attorney fees as a matter of law, because there had been no basis in fact for the filing of the NMPC.

On February 11, 2016, this Court held a hearing on U.S. Bank's Response to Debtor's request for attorney fees.  At the conclusion of the hearing, the Court took the matter under advisement.  The Court also granted U.S. Bank's request for an opportunity to file a post hearing brief.  U.S. Bank filed its brief on February 18, 2016.

<u>Discussion</u>

The issue before the Court is a novel one.  The specific issue is which party should bear the cost incurred by a debtor in responding to a NMPC which is subsequently withdrawn.

It is Debtor's position that there are no facts which justified the filing of a NMPC by U.S. Bank.  Debtor argues that because there was no factual basis for the NMPC, she is entitled to recover attorney fees incurred in objecting to a pleading which should never have been filed.

U.S. Bank makes two arguments in response.  First, U.S. Bank argues that there is no legal authority which would permit this Court to award attorney fees to Debtor.  Second U.S. Bank argues that is had grounds to file a NMPC, and withdrew the NMPC because it was the "action least detrimental to Debtor." (U.S. Banks's Response to Debtor's Objection to Notice of Payment Change, Docket No. 67).

U.S. Bank's response to Debtor's request that it compensate her for legal fees incurred in

5

objecting to the NMPC, raises both a legal issue and a factual issue.  The legal issue is whether there is any authority which permits this Court to require that fees be paid directly by a creditor.  Assuming the Court finds such authority, the factual issue is whether U.S. Bank's conduct warrants that relief.

Debtor makes three arguments as to why U.S. Bank should be required to pay attorney fees to Debtor's counsel.  Debtor's first argues that she is entitled to fees under Fed. R. Bankr. P. 9011(b).  Fed. R. Bank. P. 9011(b) provides in relevant part:

> By representing to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;                                  . . .
>> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Bankr. P. 9011(c) provides:

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Bankr. P. 9011(c)(1)(A) states the procedure for requesting the sanctions imposed by Fed. R. Bank. P. 9011(c).  That section states:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  It shall be served as provided in Rule 7004.  The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the

6

challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).

The Court finds that Debtor is not entitled to an award of fees against U.S. Bank under Fed. R. Bankr. P. 9011. Debtor has never filed a motion for sanctions as required by Fed. R. Bankr. P. 9011(c)(1)(A). Rather, it appears the Debtor's counsel first requested that U.S. Bank pay his attorney fees after U.S. Bank filed its "Notice of Withdrawal of Notice of Mortgage Payment Change." While Debtor's counsel may have had grounds for requesting attorney fees, an oral request for payment of attorney fees does not comply with the procedural requirements of Fed. R. Bankr. P. 9011. Therefore, in the context of this case there is no basis for awarding fees under Fed. R. Bankr. P. 9011.

Debtor's second argument as to why U.S. Bank should pay her attorney fees is that the Court has inherent authority to award fees. The inherent power to sanction bad faith conduct by awarding attorney fees against a party is a separate and distinct source of authority which is not displaced by federal rules or statutes. *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991). Sanctions under a court's inherent power are justified against a party who willfully disobeys a court order or acts in bad faith. Bad faith "includes a broad range of willful improper conduct." *Fink v. Gomez,* 239 F.3d 989, 991-92 (9th Cir. 2001). To impose inherent power sanctions, a court must find that a party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers,* 501 U.S. at 44, quoting *Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240, 258-59 (1975). *See also, BDT Products, Inc. v. Lexmark Internat'l, Inc.,* 602 F.3d 742, 753 (6th Cir. 2010)("we hereby hold that the 'mere fact that an action is without merit does not amount to bad faith.'"); *Miracle Mile Assocs. v. City of Rochester,* 617 F.2d 18, 21 (2d Cir.

7

1980)("The mere fact that an action is without merit does not amount to bad faith."); *Monroe Bank and Trust v. Nowatzke (In re Nowatzke)*, 318 B.R. 400, 404 (E.D. Mich. 2004), quoting *Chambers*, 501 U.S. at 45-46 (the court has the inherent power to police itself, thus serving the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.")

Based on the case law, this Court clearly has the inherent power to award attorney fees against a party engaging in vexatious or unethical conduct. The case law demonstrates, however, that courts only use this power to sanction a party who has acted with the intention of delaying or harming the opposing party.

In reviewing the pleadings filed in this case, the Court cannot conclude that there was a level of bad faith in filing the NMPC that would justify the Court using its inherent authority to require U.S. Bank to pay Debtor's attorney fees. While the NMPC filed by U.S. Bank may have been unintelligible, there is no evidence in the record to indicate that the NMPC was filed to harass or cause harm to Debtor. Therefore the Court concludes that Debtor has no entitlement to fees under this Court's "inherent power."

Debtor's counsel's final argument as to why U.S. Bank should pay her attorney fees is that 11 U.S.C. § 105 authorizes such an award. 11 U.S.C. § 105(a) states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a) gives bankruptcy courts broad authority to impose equitable remedies that are necessary to preserve rights provided in the Bankruptcy Code. Many courts have ruled that 11 U.S.C. § 105(a) provides authority for awarding attorney fees against a party who has engaged in

8

vexatious litigation or fraud. *See e.g., Adell v. John Richards Homes Building Co., LLC (In re John Richards Homes Building Co., LLC),* 552 Fed. Appx. 401, 414 (6th Cir. 2013)("In this Circuit, then, bankruptcy courts appear to have some authority to award punitive damages for abuse of process and fraud on the court under both §105(a) and the court's inherent powers"); *Kloeber v. Montanari (n re Montarari)*, 541 B.R. 420, 427 (E.D. Tenn. 2015)(§105(a) provides authority to award attorney fees against a party whose "maneuvers or schemes have the effect of undermining the integrity of the bankruptcy system."); *In re Varona*, 388 B.R. 705 (E.D. Va. 2008)(attorney fees may be awarded under 11 U.S.C. § 105(a) against a party who files a false proof of claim); *DeLauro v. Porto (In re Porto),* 645 F.3d 1294 (11th Cir. 2011)(attorney fees may be awarded under 11 U.S.C. § 105(a) against a party who violates a court order or upon a finding of bad faith); *Ginsberg v. Evergreen Security , Ltd. (In re Evergreen Security, Ltd),* 570 F.3d 1257 (11th Cir. 2009)(attorney fees justified under 11 U.S.C. § 105(a) upon a finding of bad faith and bad faith exists where an attorney knowingly or recklessly raises a frivolous argument); *Barnes v. Dalton,* 158 F.3d 1212 (11th Cir. 1998) (If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith justifying the award of sanctions). Based on the case law, this Court concludes that 11 U.S.C. §105(a) provides authority to award attorney fees only when the creditor's conduct demonstrates some level of bad faith.

After carefully reviewing the Proof of Claim, the NMPC and the supporting documentation, and the pleadings filed by the parties, this Court concludes that U.S. Bank's conduct in filing the NMPC does not demonstrate the level of bad faith necessary to warrant an award of attorney fees. The "Bankruptcy Account History" attached to the NMPC contains

9

information (albeit buried and very difficult to find) which suggests that U.S. Bank may have had reason to file a NMPC. First, in the column labeled "Actual Payment to Escrow," it appears that U.S. Bank did not receive any payments into the escrow account for the months March, April, May and June, 2015. While it is unclear why U.S. Bank did not receive payments, if U.S. Bank did not receive payment because Debtor failed to make plan payments during those months, the failure to make plan payments would create an escrow shortage which would have to be made up in future plan payments. Second, in the column labeled "Actual Payment from Escrow.," U.S. Bank states that in July, 2014, it was required to spend $512.00 to purchase "hazard insurance" for Debtor's property. Since this disbursement did not occur until after Debtor filed her bankruptcy petition on June 3 , 2014, U.S. Bank did not include this disbursement in the escrow delinquency contained in the Proof of Claim. While it might have been better practice to factor this disbursement in to the calculation of the escrow payment at some point prior to October, 2015, the <u>existence</u>[2] of the disbursement substantiates U.S. Bank's argument that there was a shortage in the escrow account which required a filing of a NMPC.[3]

---

[2]Since U.S. Bank has withdrawn its NMPC, the Court is unsure whether U.S. Bank intends to pursue collection of this post-petition disbursement. If U.S. Bank intends to pursue collection through a future NMPC, Debtor retains the right to object to the validity or timeliness of the attempt to collect the disbursement.

[3]As part of her argument that U.S. Bank had no factual basis for filing a NMPC, Debtor argues that she pays her own insurance, and therefore could have no liability to the bank for insurance. As proof of her payment, Debtor points to the Order Confirming Plan, which required that Debtor pay her own insurance and to a plan modification which went into effect on March 10, 2015. The plan modification reduced Debtor's plan payments to allow Debtor sufficient funds to pay for homeowner's insurance. (See Docket Nos. 32 and 35). Neither the "Order Confirming Plan" or the "Order Modifying Plan" prove that Debtor had homeowner's insurance in July, 2014, the date on which U.S. Bank claims it disbursed $512.00 to pay for hazard insurance. Therefore, the Court concludes that U.S. Bank may have made such a disbursement, and if it did, there might be a shortage in the escrow account requiring a NMPC.

Since the Court has concluded that there may have been a factual basis for filing a NMPC, this Court cannot find that U.S. Bank acted in bad faith. Because the Court finds that the NMPC was not filed in bad faith, this Court denies Debtor's request for attorney fees under 11 U.S.C. § 105(a). That being said, this Court fully understands Debtor's frustration with the NMPC. The NMPC was inaccurate and incomprehensible. The explanation initially offered by U.S. Bank as to what created the escrow shortage bears no relationship to what actually might have caused an escrow shortage (missed payments and the disbursement for hazard insurance). The explanation as to how U.S. Bank arrived at the conclusion that Debtor's projected escrow shortage was $3,064.67 is stated as:

> Expected Balance Deficiency - According to the last month of the account history, the expected escrow balance is $-1,021.31, making the escrow balance deficiency $1,021.31 (the balance deficiency equals the total amount paid into escrow minus the total amount of money to be paid this year). Total escrow shortage - Based on the expected balance deficiency of $1,021.31, and the minimum required balance/cushion of $700.18, an additional $3,063.67 is needed for the escrow balance. Projected Monthly Payment for Escrow - The total escrow shortage of $3,064.67 has been spread over 12 months and broken into 12 equal monthly payments of $255.39 per month (the total anticipated shortage divided by 12). The shortage spread amount of $255.39 will be added to the target escrow payment of $350.09 calculated above, for a sum total of $605.48. This total, $605.48 will be the monthly amount due for payment into escrow.

None of the figures in this explanation make sense. How did the escrow deficiency of $1,2021.31 arise? Was it the result of missed payments by Debtor? Was an attempt to collect a pre-petition arrearage already included in the proof of claim? Where did the $700.18 figure come from? While this figure appears to be the "cushion," U.S. Bank asserts it is entitled to if the escrow account falls below a certain balance, is the bank actually entitled to this cushion payment? Even assuming there is some explanation as to why U.S. Bank was seeking to recover an escrow shortage of $1,721.49 ($1,021.31 plus $700.18), what accounts for the alleged escrow

11

shortage of $3,064.67?

It is deeply troubling that the NMPC, a document presumably intended to specifically inform Debtor of amounts she owes to the U.S. Bank, is so utterly incomprehensible. This Court was only able to conclude that there might be a factual basis for a NMPC after spending a vast amount of time looking at the numbers buried in the "Escrow Disclosure Projection" and the "escrow Disclosure History" attached to the NMPC. The lack of transparency or accuracy in a NMPC may have a serious adverse impact on a debtor's case. An incomprehensible NMPC forces a debtor's attorney to spend a significant amount of time determining whether a debtor needs to object to a NMPC. The failure to object when there are grounds to do so could be malpractice. Fees incurred by a debtor's attorney are compensable pursuant to 11 U.S.C. §330(4)(B),[4] but in a confirmed case, there is no money available for post confirmation fees unless the debtor increases her plan payment (if she is able to do so), or reduces the amount to be distributed to unsecured creditors. Thus, the burden of a mortgage creditor's inability to file a comprehensible NMPC falls on either debtor or debtor's other creditors. This hardly seems like the correct result.

The law in the Sixth Circuit is clear that sloppy or incomprehensible pleadings are not bad faith which would warrant an award of fees under 11 U.S. C. § 105(a). The Court hopes that the NMPC filed in this case is not representative of the standard of practice at U.S. Bank or its

---

[4]11 U.S.C. § 330(4)(B) states:
> "... the court may allow reasonable compensation to the debtor's attorney for representing the interest of the debt in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."

servicer OCWEN Loan Servicing, LLC. A pattern of filing such pleadings may well lead this Court to a different conclusion than the one reached in this case. In the event that U.S. Bank chooses to file another NMPC in this case, the Court expects that it will be accurate as to the amount of the escrow deficiency and coherent in explaining how the deficiency was calculated.

## Conclusion

For the reasons set forth above, the Court denies Debtor's request that attorney fees incurred in objecting to a NMPC be awarded against U.S. Bank. This opinion is without prejudice as to Debtor's counsel's right to file a fee application.

Signed on March 02, 2016

                         /s/ Marci B. McIvor
                         Marci B. McIvor
                         United States Bankruptcy Judge

13

14-49575-mbm    Doc 68    Filed 03/02/16    Entered 03/02/16 14:59:30    Page 13 of 13